UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| KENNETH E. SHOUP, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>SHOUP MANUFACTURING, INC., )<br>)<br>Defendant. )<br>)<br>SHOUP MANUFACTURING CO., INC., )<br>)<br>Counter-Plaintiff, )<br>v. )<br>GENE SHOUP MANUFACTURING, INC. )<br>(now known as NOT DEAD YET )<br>MANUFACTURING, INC.), )<br>and KENNETH E. SHOUP, )<br>)<br>Counter-Defendants. ) | Case No. 10-CV-2086 |

**OPINION**

On July 21, 2010, Counter-Defendants Gene Shoup Manufacturing, Inc. (GMS) and Kenneth E. Shoup (KES) filed this Motion for Judgment of Counter-Plaintiff's Counterclaims (#19). Counter-Plaintiff Shoup Manufacturing Co., Inc. (Shoup), filed their Response (#21) on August 4, 2010. For the reasons that follow, KES/GMS's Motion for Judgment (#19) is DENIED.

BACKGROUND

KES used to be an employee and officer of Shoup. While KES was at Shoup, several patents were developed. KES eventually left Shoup and started his own business under a similar name.

KES and Shoup entered into litigation over KES's use of the name.[1] On April 13, 2010, KES filed a Complaint (#1) that makes the following allegations:

KES founded Shoup Manufacturing, Inc., in 1977. KES became President of Shoup Manufacturing in 1977 and remained in that position until November 6, 2006. KES conceived of and reduced to practice several inventions while at Shoup Manufacturing, which were patented on behalf of Shoup Manufacturing. While with Shoup, KES did not have an express, written employment contract that explicitly required assignment of rights to inventions. However, Shoup maintains that KES was nonetheless obligated to do so. While at Shoup, KES was responsible for the following inventions: (1) row cleaner, which was conceived and reduced to practice no later than April 29, 1994, and a patent (U.S. Patent No. 5,497,716) was granted on March 12, 1996; (2) gauge wheel scraper, conceived of and reduced to practice no later than April 15, 1997, and a patent (U.S. Patent No. 5,884,711) was granted on March 23, 1999; (3) adjustable gauge wheel for a planter, conceived of and reduced to practice no later than June 9, 2000, a patent (U.S. Patent No. 6,321,667) was granted on November 21, 2001. Shoup admits that applications were filed for these inventions by and on Shoup's behalf, but maintains that Shoup, not KES, is the rightful owner of the patents.

In 2000 KES transferred ownership of Shoup to his then wife, Cheryl M. Baber. KES terminated his relationship with Shoup on November 7, 2006. The dispute at issue in the original Complaint (#1) concerns ownership of the three patents mentioned above. In his Complaint, KES alleges Shoup has manufactured and/or sold the patented products at issue. He alleges that, since November 2006, Shoup has had no express or implied license to practice those patents, but that

---

[1] The prior litigation is Case No. 10-CV-2038, before Senior U.S. District Court Judge Harold A. Baker.

Shoup continues to advertise the patented products in catalogues. KES claims Shoup is infringing and inducing others to infringe the patents in violation of 35 U.S.C. § 271. KES alleges Shoup had actual knowledge of the patents and their applicability to the products they are selling, yet wilfully and wantonly continued to sell the products. Count I concerned the row cleaner (patent No. 5,497,716); Count II concerned the gauge wheel arm kits (patent No. 5,884,711); and Count III concerned the gauge wheel arm kits as well (patent No. 6,321,667) (these three patents will hereinafter be referred to as the "original patents in suit"). KES asks for injunctive relief and damages against Shoup for the patent infringement.

Shoup filed its Answer and Affirmative Defenses to Complaint and Counterclaims (#8) on May 3, 2010. In the Answer, Shoup denied both that KES held title and was the rightful owner of the patents at issue. Shoup denied that it was infringing on any patents held by KES. Shoup denied KES was suffering damages. Shoup further alleged affirmative defenses to KES's Complaint, such as the Complaint being barred in whole or in part because KES does not own the patents on which the Complaint is based and because KES was obligated to assign to Shoup the original patents in suit. Further, Shoup alleges they received an express or implied license to the inventions and original patents in suit.

Shoup also filed Counterclaims, on which this instant Motion for Judgment on the Pleadings is based. In the Counterclaim, Shoup alleges that KES developed nine patents related to Shoup (including the original patents in suit) while KES was an employee and officer of Shoup on company time using company resources. Shoup contends it is the rightful owner of these patents and seeks to memorialize the ownership by compelling a written assignment from KES to Shoup. Shoup also seeks an accounting in relation to the revenues, royalties, and other payments received by KES as

a result of his "unauthorized exploitation of these patents," as well as an order forcing KES to disgorge any sums he has received from this unauthorized exploitation. Shoup also seeks damages for trademark infringement and unfair competition arising out of KES's infringement of the Shoup trademark in connection with a competing business KES set up, Gene Shoup Manufacturing (GSM). Although KES and GSM recently consented to a permanent injunction based on this trademark infringement and unfair competition in Case No. 10-CV-2038 before Judge Baker, the damages aspect of these claims was dismissed without prejudice and is realleged by Shoup as part of their counterclaim.

Shoup alleges that there is an ownership dispute as to nine patents developed by KES while at Shoup (the original patents in suit and the six additional patents alleged in the counterclaim, hereinafter known as a the "additional patents in suit"). Shoup alleges that it is the rightful owner of the patents and that KES, while at Shoup, improperly licensed and personally accepted royalty payments for the Shoup patents without Shoup's knowledge or consent.

Shoup also alleges trademark infringement and unfair competition. Between October 27, 2008, and the entry of the consent decree on April 1, 2010, KES and GSM began a competing farm equipment business in connection with and under the expression "Gene Shoup Manufacturing, Inc." and variations thereof. Shoup alleges this competing business involved the sale of products under the infringing expression (Gene Shoup Manufacturing) which were the same as, or related to, the goods provided by Shoup under the Shoup trademark and the U.S. trademark registrations. Shoup claims KES and GSM's use of the infringing expression in connection with their products was an attempt to misappropriate the goodwill and reputation of Shoup based on the Shoup trademark and that it caused actual confusion in the marketplace.

There are nine counts in the Shoup Counterclaim: Count I- declaratory judgment under 28 U.S.C. § 2201 against KES, that KES possesses a duty to assign to Shoup patents but he has refused to do so; Count II- breach of fiduciary duty against KES, which KES breached, while an officer and employee of Shoup, by licensing and covenanting, on behalf of Shoup without authorization, not to sue the licensees under one or more of the Shoup patents for his own personal benefit and by accepting and retaining royalty payments from the licensees in consideration for the same; Count III - usurpation of corporate opportunity against KES, as KES owed Shoup a duty of loyalty, and instead personally accepted royalty payments from licensees, instead of having Shoup receive the payments; Count IV- unjust enrichment against KES, in that while an employee of Shoup, KES licensed and covenanted that Shoup would not sue licensees under one or more of the Shoup patents and personally accepted royalty payments from licensees; Count V- trademark infringement pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114); Count VI- federal unfair competition pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a) against KES and GSM; Count VII- Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. 510/2) against KES and GSM; Count VIII- Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/2) against KES and GSM; and Count IX- common law unfair competition against KES and GSM.

ANALYSIS

Rule 12(c) of the Federal Rules of Civil Procedure states:

> "After the pleadings are closed — but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

Each argument made in KES/GSM's motion will be taken in turn.

**Argument 1: There is no original federal jurisdiction over Counts I-IV**

KES/GMS first argue that there is no federal jurisdiction over Counts I-IV. They argue that Counts I-IV (alleging that KES: had a duty to assign Shoup patents (I), breached his fiduciary duty (II), usurped corporate opportunity (III), and was unjustly enriched (IV) on the original patents in suit) are "Illinois Business Claims" and relate to issues that do not depend on patent law. As they do not relate to patent law, original federal jurisdiction under 28 U.S.C. § 1338(a) does not exist. Further, KES/GMS argues, that even if Shoup had plead original jurisdiction, such a claim would be improper, as all of the "Illinois Business Claims" are based on Shoup's alleged ownership of both the original in-suit patents and the additional counterclaim patents, and a determination of ownership is a state issue and not sufficient to establish original jurisdiction in federal court under § 1338(a).

Shoup admits that Counts I-IV of the counterclaim are state law claims. Therefore, the court agrees that there is no original federal jurisdiction in counterclaim Counts I-IV.

**Argument 2: There is no supplemental jurisdiction over Counts I-IV**

While it admits that there is no federal original jurisdiction to counterclaim Counts I-IV, Shoup claims that those counts may survive in a federal lawsuit due to supplemental jurisdiction. Shoup argues that, since the patent infringement claims and the patent-based counterclaims share "common operative facts" (original complaint Counts I-III and counterclaim Counts I-IV) they are "so related" that they can all be considered part of the same Article III "case or controversy" under the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). KES/GMS counter that supplemental jurisdiction cannot be exercised because the facts underlying the Illinois Business Claims as to the additional patents in suit do not share a common nucleus of operative fact as to the original patents in suit required by § 1367(a).

Supplemental jurisdiction is defined thusly:

"Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).

Claims are part of the same case or controversy if they derive from a common nucleus of operative facts, and a loose factual connection between the claims is all that is required. Sanchez & Daniels v. Koresko, 503 F.3d 610, 614 (7th Cir. 2007).

Just such a common nucleus of operative fact exists in the instant case between Counts I-III of the original complaint and Counts I-IV of the counterclaim.  All of the patent infringement claims in KES's Complaint are premised on who owns the original patents in suit.  The facts at issue concern patents developed during KES's tenure with Shoup.  The facts concern actions taken by Shoup with respect to the manufacture and sale of products developed from those patents.  The facts concern who is the rightful owner of those patents.  The claims at issue in Counts I-IV of the counterclaim involve nine patents, including the three at issue in the original Complaint.  Counts I-IV ask for (1) a declaration of ownership as to the patents; (2) a finding that KES breached his fiduciary duty by licensing the patents without authorization to licensees for KES's own personal benefit; (3) a finding that KES usurped corporate opportunities by failing to present to Shoup an opportunity to license one or more of the patents to licensees in exchange for royalty payments from the licensees and instead reaped personal profit for the licenses; and (4) a finding that KES became

unjustly enriched from those alleged actions. All of these counts will turn on issues of ownership regarding the patents in dispute. There will almost assuredly be significant overlap in factual issues related to the three common patents at issue in both the original Complaint and counterclaim. Even as to the six additional patents in suit named in the counterclaim but not named in the original Complaint, there may be common issues of fact needed to determine patent ownership. The court agrees with Shoup that all nine of the patents at issue were developed by KES during his time with Shoup, and the nature of KES's relationship with Shoup may therefore determine who owns or has rights in all of these inventions under a variety of theories. Thus, the court can say there exists at the very least a loose connection between the claims to find they derive from a common nucleus of operative fact. See Sanchez & Daniels, 503 F.3d at 614. The court will exercise supplemental jurisdiction over Counts I-IV of the counterclaim.

Further, the cases cited by KES/GMS in support of their argument against supplemental jurisdiction are distinguishable. In Berg v. BCS Financial Corp., 372 F.Supp.2d 1080 (N.D. Ill. 2005), the court found that an ERISA claim for benefits did not relate to a state law contract claim because, even though the claims emerged out of the same factual background, the dismissal of the state law claim would in no way effect the ERISA claim. Berg, 372 F.Supp.2d at 1095. In contrast, here, all the patents at issue emerge out of the same factual background, and determination of ownership on one patent could necessarily affect the others, and a ruling on ownership on various patents will impact the various Illinois Business Claims in Counts I-IV of the counterclaim. As to another case cited by KES/GMS, American Development v. International Union of Operating Engineers, 1998 WL 246455, at *3 (N.D. Ill. April 29, 1998), the court agrees with Shoup that the instant case differs in that the federal and state law claims have common operative facts and specific

factual connections.

### Argument 3: There is no supplemental jurisdiction over Counts V-IX

KES/GMS also argues that judgment must be granted in their favor over Counts V-IX of the counterclaim because no supplemental jurisdiction exists to bring them to federal court. KES/GMS claim that supplemental jurisdiction does not exist because Shoup's trademark claims and KES's patent infringement claims do not derive from the same nucleus of operative fact. Specifically, KES/GMS argues that their patent infringement claims involve the original three patents, while Shoup's trademark claim involves the Shoup trademark, which involves different property, products, and law thus requiring different facts to be developed. Therefore the resolution of the patent infringement claims will have no impact on the trademark claims and supplemental jurisdiction should not be exercised.

Shoup counters that it is alleging virtually the same trademark and unfair competition related facts in support of both federal counterclaims arising under the Lanham Act (Counts V-VI) as well as state-law counterclaims based on Illinois statutes and common law (Counts VII-IX). Shoup contends that both these federal and state law theories seek monetary relief based on the Shoup trademark and the exact same course of conduct: KES and GSM's deceptive and confusing use of "Gene Shoup Manufacturing, Inc." in a competing farm equipment business between late 2008 and early 2010.

The court agrees with Shoup that the facts at issue in Counts V-IX of the counterclaim are nearly the same. The facts will be in support of both federal and state trademark/unfair competition claims. Counts V and VI clearly allege federal claims, and examining the counterclaim, Counts VII-IX allege state law claims that will require very similar factual determinations to the federal claims

in Counts V and VI.  Therefore, the court will exercise supplemental jurisdiction and allow Counts V-IX to remain in the counterclaim.

### **Argument 4: Counts I-IV are not compulsory counterclaims under Rule 13(a)**

KES/GMS argues that Counts I-IV are not compulsory counterclaims because they do not arise out of the same transaction or occurrence as KES's patent infringement claims and are not logically related to those claims.  Again, KES/GMS claims that determination of patent ownership will not affect the outcome of Counts I-IV.  KES/GMS also claims that Counts V-XI do not meet the same transaction or occurrence test.  Shoup counters that the supplemental jurisdiction test is broader than the same transaction or occurrence test.  Shoup argues that if the court finds supplemental jurisdiction under § 1367(a), that satisfies the same transaction or occurrence test.

Rule 13(a) of the Federal Rules of Civil Procedure states:

> "A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:
>
> arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim."  Fed. R. Civ. P. 13(a)(1)(A).

§ 1367 allows federal courts to maintain supplemental jurisdiction over counterclaims, whether they are compulsory or permissive, so long as they are so related as to form part of the same case or controversy.  Rothman v. Emory University, 123 F.3d 446, 454 (7th Cir. 1997).  In § 1367(a) Congress rejected the more narrow "same transaction or occurrence" test and authorized supplemental jurisdiction coextensive with the same case or controversy requirement of Article III.  Baer v. First Options of Chicago, Inc., 72 F.3d 1294, 1299 (7th Cir. 1995).  The court has already determined that supplemental jurisdiction should be exercised over all the counts in

Shoup's counterclaim. Those counts, under § 1367(a), are properly in the case.

KES/GMS has also made an argument that Counts II-IV, as they relate to the original patents in suit, are "immature" under Rule 13(a) as KES has never licensed them to a third party or received royalties associated with those patents. Shoup contends that "immaturity" just allows for a claim to be brought in later litigation and is not a reason for dismissal. The argument made by KES/GMS seems to be more of a merit based argument, and the court cannot, at this stage, make a merit based ruling as there has been no discovery. The court does not know if KES has ever licensed the original patents in suit to a third party. This argument must be denied as well.

### Argument 6: Counts II-IV and V-IX should be dismissed because they do not constitute a live case or controversy

KES/GMS next argues that Counts II-IX of the counterclaim should be dismissed because they do not constitute a live case or controversy. For Counts II-IV, KES/GMS again argues that KES has never licensed any of the original patents in suit to a third party, therefore there can be no breach of fiduciary duty, usurpation of corporate opportunity, or unjust enrichment. For Counts V-IX, KES/GMS argues that KES ceased use of the Shoup trademarks prior to suit, thus they are no longer engaging in the conduct that forms the basis of the claims. Shoup counters that KES/GMS's argument on Counts II-IV deal with standing and ripeness, but there is no jurisdictional issue. They argue that they are the proper party to bring their claims. As to the affidavit of KES saying he has not licensed patents to third parties, Shoup argues that questions about the merits of a claim do not create jurisdictional issues unless the claim as pleaded is legally frivolous. As to KES/GMS's argument on Counts V-IX, Shoup claims it is

seeking monetary relief for damages inflicted in the past as well as injunctive relief, and thus seeking monetary relief for damages prevents a claim from being rendered moot.

As to Counts II-IV, the court agrees with Shoup. KES has submitted a self-serving affidavit stating he has not licensed patents to third parties. However, as stated above, this goes to the merits of the case. There is nothing on the face of the counterclaim as pleaded that is legally frivolous, and thus questions about the claims' merits do not create a jurisdictional issue. The merits of the case will be resolved later following discovery.

As to Counts V-IX, KES/GMS cites to Alpha Delta Phi International, Inc. v. Chi Delta Chi, 1995 WL 32622 (N.D. Ill. Jan. 26, 1995), where the district court found trademark infringement claims moot once the offending party had ceased to infringe the trademark and dismissed the case in its entirety at the summary judgment stage. However, in that case, the only relief sought was injunctive, not monetary. Here, Shoup has sought monetary relief on the trademark infringement claims, and the court agrees with Shoup that the seeking of monetary relief prevents a claim from becoming moot. Memphis Light, Gas, & Water Division v. Craft, 436 U.S. 1, 8 (1978). KES/GMS's argument on this ground is denied.

**Argument 6: Count VII should be dismissed because it fails to state a claim upon which relief can be granted**

Finally, KES/GMS argues that, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Count VII of the counterclaim should be dismissed because it fails to state a claim upon which relief can be granted. Count VII alleges a violation of the Illinois Uniform Deceptive Trade Practices Act (UDTPA), which provides relief in the form of an injunction as opposed to monetary damages. 815 Ill. Comp. Stat. 510/3 (West 2008). As KES is already

enjoined from use of the Shoup trademarks, Shoup does not seek an injunction under the UDTPA, but rather monetary relief in the form of its profits, which is not provided for under the UDTPA.

Shoup counters that Section 3 of the UDTPA permits an award of costs and attorney's fees, which remains available. Further, the Consumer Fraud and Deceptive Business Practices Act (CFDBPA) makes a violation of the UDTPA an automatic violation of the CFDBPA. 815 Ill. Comp. Stat. 505/2 (West 2008). Shoup expressly pled this relationship in paragraph 71 of Count VIII, and therefore monetary damages, which are provided for under the CFDBPA, are in fact available for a UDTPA violation in Count VII. 815 Ill. Comp. Stat. 505/10a (West 2008); Duncavage v. Allen, 497 N.E.2d 433, 441 (Ill. App. Ct. 1986).

The court agrees with Shoup, that monetary damages are available for a violation of the UDTPA as alleged in Count VII through the corresponding CFDBPA violation as alleged in Count VIII. Thus, KES/GMS's argument must fail.

IT IS THEREFORE ORDERED:

(1) KES/GMS's Motion for Judgment of Counter-Plaintiff's Counterclaims (#19) is DENIED.

(2) This case is reassigned to Senior U.S. District Court Judge Harold A. Baker.

ENTERED this 16th day of September, 2010

s/ MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE